STATE v. T. H. BROWN AND W. A. L. SMITH.

(Filed 3 May, 1922.)

1. **Intoxicating Liquor—Spirituous Liquor—Evidence—Verdict—Motions —Nonsuit—Trials.**

*Held,* the evidence in this case of the close relation and conduct of the
two defendants indicted for violating the prohibition law, the location of
the still on the land of B. and with pathway to his house, his furnishing
the wood for the still, found by the officers fired and surrounded with
material for the distillation of liquor, and the acts and conduct of S. in
relationship to the unlawful act, is upon defendants' motion to nonsuit,
sufficient to sustain a verdict of conviction against B. of "guilty of per-
mitting a distillery to be erected on his premises and manufacturing
liquor," and against S., of "guilty of manufacturing liquor."

2. **Appeal and Error—Rules of Court—Dismissal.**

A case on appeal will be dismissed in the Supreme Court when the
appellant has not conformed to the rule requiring that it be docketed in
a certain time before the call of the district, at the first term of the
Supreme Court beginning after the trial, and has failed to apply for a
*certiorari* on good cause shown.

APPEAL by defendants from *McElroy, J.,* at June Term, 1921, of MECKLENBURG.

The defendants were indicted for violation of the prohibition law.

The defendants excepted for the refusal to nonsuit. The evidence for the State, condensed, tends to show the following facts: That about 10 April, 1921, the deputy sheriff and four officers named, in consequence of information received, went out to a farm owned by the mother of Brown, but under his control and management, and found there a 50-gallon still, two large vats of still beer, and all kinds of barrels, slop vats, funnels, buckets, and everything used in connection with making whiskey. The still was a good one, built on a brick furnace and cased up with brick. They also found a lot of provisions there, such as ham, cheese, coffee, light-bread, and a great number of empty sugar sacks. They found the vats full of beer that was working, about 2,000 or 3,000 gallons. This beer was ready for the still. The still was hot and the fire was burning beneath it. The officers put out the fire by pulling the wood out from under the furnace. The still was about 50 yards from the edge of a meadow, where the defendant Brown was in the habit of cutting hay. At that date, 10 April, the hay had not been cut, but nearby was an old stack place, where the hay the year before had been stacked. Across this meadow and about 100 yards from the still was an old house place. The old house had been torn down and the timbers sawed into wood, and there was a large pile of that wood down at the still. The officers carried some of the wood found at the still up to the old house place and compared with the wood lying there, and found that it was the same and sawed the same length. The chimney of this old house had also been torn down and the brick used at the still appeared to be the same as that remaining in the old chimney at the house.

There was a road to the old house and a well-beaten path led therefrom to the still. The road stopped at the old house place and the path ran from that place to the still and stopped there. The officers found the still by following that path. They found a lantern setting on the wood pile at the old house place. It was black with smoke, had beer slops on it, and had evidently been used at the still. The wood at the still, when compared with that at the house place, was found to be the same size and length, and was sawed in the same way. Deputy Sheriff Festerman went back there a few days later and found the same things there, except that they had been moving the vats out. Most of them had been moved away. He testified further that he saw the defendant Lee Smith drive up in a Ford truck just as he was leaving. "He never said anything to me. He saw us and turned off through an old field. I saw two men in the truck with him, but I don't know who they were. He sorter drove through the old field and stopped. I don't know what had become of the

lumber and stuff that had been moved away, but it had been moved. Part of the furnace had been carried out into the old field."

The defendant Brown had had this house torn down about two or three weeks before the still was discovered, and part of the timber sawed up and left there. Two days before the still was discovered, three negro boys saw the defendants Smith and Brown go down to the still. .They drove their automobile up to the old house place, then got out of the car, came down the road, turned up the edge of the thicket and went into the still. They stayed there about 5 or 10 minutes, then left. The boys, noticing this, after they left, followed them, found a path, then took the path and went to the still.

Both defendants denied that they knew anything of this still. They admitted that they were at the old house place and had walked down in the meadow at the time that the three boys saw them, but claimed to have gone there to look after the hay of last year's cutting. The defendant Brown testified that his hay yard was about 135 yards from the still, and said: "When I got out of my automobile that day I did not go in the direction of the still place at all; I went in the other direction. . . . We did not go into the thicket at all, and I did not see any path leading to the still until after it was captured." He admitted he had hauled the lumber and some of the slops from the still after the still was cut up, and that he gave his codefendant Smith some of the slops.

The defendant Smith admitted that he got about a quart of liquor which was made at this place, and said: "Some boys found some liquor down there on Tuesday evening and brought it to my house. They took the most of it, at least some one did. I do not know who got the balance. I got less than a quart."

There was some evidence introduced by the defendant in explanation or contradiction of some of the above testimony, but the jury did not give it credence, and found the defendant Brown "guilty of permitting a distillery to be erected on his premises and manufacturing liquor," and Smith they found guilty of manufacturing. Judgment and appeal.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*F. M. Redd and D. B. Smith for defendants.*

CLARK, C. J. On this motion for nonsuit, the evidence of the State must be taken as true with the most favorable inferences that the jury was authorized to draw from it. As to the defendant Brown, the evidence was sufficient to be submitted to the jury both on the charge of knowingly permitting land in his possession and under his control to be used as a place for the manufacture of liquor; and also for manu-

facturing it. He admits that he was in and about this meadow frequently a short time before the still was discovered; that he directed the tearing down of the house and the sawing up of some of its timbers on its site, and was himself in and about the place while this work was going on. The State's evidence established clearly that there was a well-beaten path from this house to the still; that the fire wood used at the still came from the pile admittedly sawed under direction of the defendant; that setting on this pile of wood at the house was a lantern, smoked and beer-besprinkled, which bore traces of having been used at the still; and that the brick used in the furnace came from the chimney of this old house.

In *S. v. Jones,* 175 N. C., 709, *Walker, J.,* for the Court, held that one was guilty of manufacturing if he furnished the still, or the corn, or the coal and wood to make the fire, or any other material used in the manufacture of liquor. A bill similar to the one in this case was passed upon and sustained by the Court at last term by *Hoke, J.,* in *S. v. Mundy,* 182 N. C., 910.

The defendant Smith, according to the evidence, was identified with Brown in the whole affair. He was with him on nearly every occasion where Brown is shown to have appeared at or near the still. Smith shared not only in the beer left at the still, but in the whiskey which had been made there, and was seen by two of the officers under suspicious circumstances, apparently going there to haul off the lumber after the still was cut up.

The evidence was sufficient to submit to the jury, and would have authorized the inference that the parties were at the still that morning before day preparing for the manufacture of whiskey, and made their escape before the officers got there, one of them carrying the lantern to the old house place, but blowing it out and setting it upon a pile of wood after they had reached the open. Upon the evidence, taken as the law requires on a motion of this kind, in its most favorable aspect and with the most favorable inferences which the jury can draw therefrom in favor of the State, we could not say that there was no evidence fit to be submitted to the jury against the defendant Smith, although the evidence is not as full and complete against him as against his codefendant. They were evidently associated, and there was evidence to convict Smith of aiding and abetting and hence guilty of the charge of manufacturing, C. S., 3409, as found by the jury.

We have stated and discussed this case because it was argued before us, which would not have been done if we had been advertent to the fact that this case was tried at June Term, 1921; that the record was not docketed, nor any *certiorari* applied for at the fall term, and a *certiorari* would not have issued unless on good cause shown. Indeed, the appeal bond below was not filed until 11 March, 1922, and the appeal was not docketed here until 6 April, 1922.

Under the always uniform ruling of the Court, the appeal should have been dismissed. This has been often reiterated and several cases have been dismissed at this term accordingly. The reason of the rule and the necessity for its uniform observance was restated as late as last week in *S. v. Barksdale, ante,* 785. The Court will make no discrimination between litigants in the requirements which we have found necessary and have always adhered to.

Appeal dismissed.